## Reese *vs* Walton.

CHANCERY. $\frac{4bm507}{122\ 278}$

APPEAL FROM THE HARRISON CIRCUIT.

*Case* 101.

*Rescission.   Assignor and Assignee.   Parties.*

JUDGE MARSHALL delivered the opinion of the Court.

May 7.

REESE, having purchased a tract of land from McClin- Case stated.
tock, passed to him as part payment, a note payable to
himself, with his name indorsed in blank upon it, and
McClintock afterwards passed the same note to Walton
for a valuable consideration, without putting his own
name upon it, and leaving the indorsement of Reese still
in blank. Walton filled up this indorsement to himself,
sued the obligor of the note to insolvency, and obtained
judgment by default, and upon an assessment of dama-
ges against Reese, for the full amount of the note. To
enjoin further proceedings at law and obtain a rescission
of the contract for the land, Reese filed this bill against
Walton and McClintock, alledging that the land purchas-
ed from McClintock, and in part payment for which the
note was passed to him, was heavily encumbered by two
mortgages amounting to nearly or quite the value of the
land, the largest of which he had discovered since he re-
ceived a deed from McClintock, and the other, McClin-
tock had promised to discharge at the time of their con-
tract, and had assured him he had discharged before the
deed was made, but, as he has since discovered, it re-
mains wholly unsatisfied. Walton denies all knowledge
of any of these transactions and of the connection of the
note with them, and relies upon the fact that he acquired
the note for a valuable consideration, with the blank in-
dorsement of Reese upon it, trusting to his responsibility
alone, and without notice of any equity he might have
against McClintock, and he insists that he is not to be
affected by any such equity, nor involved in the trans-
actions between Reese and McClintock, which may
have formed the consideration of the transfer of the note
from the former to the latter.

The two mortgages referred to in the bill, and the deed from McClintock to Reese were filed, and compose a part of the record before us.

From these documents it appears that the mortgages, securing an aggregate sum of about $1900, besides several years interest, cover the land conveyed to Reese, and also about fifty acres adjoining, which are alledged in the bill to be of little value, and that the consideration of the sale to Reese was about $2250. Of this sum the deed acknowledges the receipt in hand of $600, consisting, as may be presumed, of the assigned note now in question, amounting to about $550 and a small note for about $50, executed by Reese and assigned by McClintock to Walton, and of which all but some $12 or $15 seems to have been paid. For the residue of the consideration, amounting to about $1650, the deed recites that Reese had executed his notes to a third person, who may be presumed to have been the creditor of McClintock, whose insolvency is alledged both by Reese and Walton. There is no proof in the record as to the amount actually due upon the mortgages, and as to what may be due on the largest one the complainant does not venture a positive assertion. No persons were made defendants but Mc. Clintock and Walton, and there is no evidence but that furnished by the pleadings and documents already referred to.

*Decree of the Circuit Court.*

In this state of preparation, the cause, by consent, came on to be heard as to the matters in controversy between Reese and Walton, and the Court rendered a decree perpetuating the injunction as to the $12 or $15 remaining due on the small note executed by Reese to McClintock, and assigned to Walton, but dissolving it, with costs, as to the proceedings at law against Reese, upon the assignment of the large note. From this decree Reese has appealed to this Court, and alledges that it is erroneous upon the merits, and in making a partial disposition of the case, and also that, for the want of necessary parties, the cause was prematurely heard.

If, as is contended on the part of Walton, his interest, as the assignee of the note, and the liability of Reese to him, upon the assignment, are in no degree involved in

the transaction between Reese and McClintock, which constituted, as between them, the consideration of the assignment, it would not only be too late for Reese, after having consented to a hearing as between him and Walton, to insist that this partial hearing and disposition of the cause was premature, and on that ground erroneous. But as under such circumstances there would be neither propriety nor justice in restraining Walton from the prosecution of his legal remedy against Reese during the pendency of a controversy to which he is a stranger and which could not in any manner affect his rights, there could have been no reasonable objection to disposing of the case as to him, even if there had been no consent. But as it is manifest that the case was not in a condition, for the want of necessary parties, for determining the question of rescission, for which the bill makes out a *prima facie* case, as between the complainant and McClintock, nor for determining the liabilities of the land to the various incumbrances, nor for adjusting the conflicting interests in so much of the price of the land, or of the land itself, as may remain, if any, after satisfying the mortgages. And as it is impossible, upon the record as it stands, to say what amount remains unpaid on the mortgages, or how much of the price or of the land will remain after satisfying them, and as it is, therefore, impossible to ascertain how far the consideration of the assignment, as between Reese and McClintock, has failed, it is clear that if Walton's demand against Reese, as assignee, is subject to be affected by the want of consideration, or the failure of consideration, as between Reese and McClintock, it is impossible to dispose of the case upon equitable principles as between them alone, and their consent to the partial hearing could not enable the Chancellor to make an equitable decree.

The propriety of the decree, therefore, depends mainly upon the question whether, if the payee of a note transfer it by merely putting his name upon it and delivering it to another, he thereby makes himself responsible for the whole amount of the note to any subsequent *bona fide* holder who may fill up the assignment to himself, upon the sole condition that such assignee shall have fail-

The payee of a note, by placing his name in blank upon and sending it forth into the world, is responsible at law to a *bona fide* holder who fills up the assignment to himself

REESE
*vs*
WALTON.

and uses due
diligence but
fails to collect it
from the obligor
—but for no great-
er amount than
the considera-
tion received for
it, with interest
and costs. If it
be sold as the
consideration of
land it is subject
to the equity ex-
isting against the
first purchaser
thereof, in the
hands of the
holder.

ed to collect it from the maker, by the use of proper diligence, or whether he is bound only to the extent of the consideration as between him and his immediate transferee? In the case of commercial instruments, as bills of exchange or promissory notes, in England, coming under the provisions of the statute of Anne, every person who, being entitled to the note or bill, puts his name upon it and passes it to another, is responsible for the whole amount to a subsequent *bona fide* indorsee for value, whether his indorsement were blank or not, and without regard to the consideration existing between him and his immediate transferee. But our statute authorizing the assignment of bonds, bills, and promissory notes, has not made them commercial instruments, but by subjecting them in the hands of any assignee, to such equities as the obligor may have had against the obligee before notice of the assignment, has expressly withheld from them one essential ingredient belonging to that class of instruments.

As the statute does not impart to the instrument itself a mercantile character, and establishes between the assignee and maker a relation entirely different from that existing between those parties in case of a mercantile instrument, there is not only no ground for applying, by analogy, the principles of the mercantile law to determine the relation between the successive holders or assignees of the instrument, (as to which relation the statute is silent,) but it would seem to be entirely illogical, and it is, as we believe, inconsistent with the mercantile law itself, to say that the ordinary indorsements for passing an interest in the instrument, and the relations thereby created between the assignor and assignee, shall be governed by the mercantile law when the instrument itself, to which these are incidents, does not come within the operation of that law.

So far as regards the transfer of the legal title and right of action on this instrument, the effect of an assignment is the same under the statute as under the mercantile law, and as the statute is silent as to the form of assignment, the mercantile law has been looked to as furnishing analogies upon that point. It has accordingly

been determined that the delivery of a note with the blank indorsement of the person having the legal title to it, deprives him of his interest, and authorizes the assignment to be filled up to any subsequent holder, with the effect of vesting in him the legal title, and with the further effect of evidencing, *prima facie*, a contract of assignment between him and the blank indorser. Beyond this the analogy has not been carried.

The mercantile law has not been resorted to for determining the extent or the grounds of the assignee's liability, and it has been wholly departed from in fixing the measure of diligence to be used by the assignee against the maker of the note, before he can have an action against the assignor, and in determining that an assignor cannot be sued at law by a remote assignee. If then there had been a full assignment from Reese to McClintock, Walton could never have reached Reese but through McClintock, and would necessarily have been subject to all discounts or equities between those two, and at any rate could have recovered nothing from Reese beyond the value of the consideration which he had received from McClintock. For the recovery, by the assignee, against the assignor, being placed on the ground of a failure of consideration, the actual consideration of the assignment and its value, constitute the measure of recovery, and are always open to inquiry. How and to what extent are these principles affected by the fact that Reese delivered the note, indorsed by his name only, thus putting it in the power of a subsequent purchaser of it to fill up the assignment to himself? The promise and contract of the assignor, as implied from the ordinary assignment, is that in case of failure to collect the amount of the note from the maker, by due diligence, he will refund the consideration which he has received. And is not his contract and promise the same, and consequently the measure of his liability the same, when he passes the note with his blank indorsement? Or does his contract and liability vary according to the amount of consideration which each successive purchaser may give for the note, with his blank indorsement upon it? Or does he, by the mere fact of passing it, with his name indorsed in blank,

become bound to pay the full amount of the note to any such subsequent purchase, and will the extent of his liability and the terms of his implied contract be held in suspense and be determined, ultimately, by the fact of his indorsement being filled up to his immediate transferee, or to some subsequent holder? It would be difficult to find, in the principles heretofore applied to the relations between assignor and assignee, as existing under our statute, any authority for giving to the contract and liability of the former so indefinite and variable a character.

But again, if the note had been regularly assigned by Reese to McClintock, and by him to Walton, Walton would have had no remedy against Reese but in the name of McClintock, or by substitution to his rights. And his claim could not have been larger or stronger, upon the mere assignment, than that of McClintock. How is it then that by purchasing the note from McClintock, with the blank indorsement of Reese, he acquires a more valuable right against Reese than McClintock had? It is true he acquires the right of filling up the assignment to himself, whereby he leaves McClintock out of the chain of title, and makes himself the immediate assignee of Reese. But is this any thing more than a summary and convenient mode of substituting himself in the place and to the rights of McClintock, whereby he would have remedy at once against Reese, in his own name? It may be said that, by indorsing his name in blank, Reese gave credit to the note, and therefore should be liable for its amount to a subsequent holder. But it is only by simply assuming this inference, or by deducing it from the law merchant which has never been applicable to the relation of assignor and assignee under the statute, that it can be said that by this mode of indorsement he either gave or intended to give any more credit than if he had filled up the assignment to McClintock, that is, to the extent of the consideration received, of which there is no more notice given by the one mode of transfer than by the other. It is a begging of the question to say that he is liable for the whole note, or that in the mercantile sense he gave credit to the entire note by indorsing it in blank.

And as the question is not to be governed by the law merchant, but by the principles of the common law, as heretofore expounded in their application to the contract of assignment under the statute, we are of opinion that the essence of that contract is the same, whether the assignment be filled up from one party to the contract to the other, or be made in blank, whereby a real stranger to that contract becomes an apparent party to it in the place of the real party whose name may thus be left out of the written evidence of the transaction. The assignment, when filled up to a stranger, does indeed vest him with the legal title to the note, and creates or evidences such a privity between him and the assignor as gives the right of action upon the apparent contract of assignment: but it does not preclude the assignor from showing the real consideration of the contract, as he may in other cases of simple contract, and thus limiting the extent of his liability.

This right undoubtedly exists and may be exercised in the action at law, upon the assignment, and therefore does not, of itself, furnish a ground for coming into equity for relief. But looking to the nature of the facts upon which the question of failure of consideration depends in this case, we think the matter was clearly inappropriate for the determination of a jury, and that a court of equity, being alone competent for adjusting it properly and with a view to the rights of all the parties, the defence having been omitted in the court of law, was properly the subject of equitable jurisdiction and relief.

We have only to add, that although there is no positive proof that this note was assigned in part payment for the land, there is sufficient presumption of the fact from the absence of all evidence of any other consideration or transaction between the parties, and from the fact that the aggregate amount of that note, and the small note which is expressed to be for the land, coincides precisely with the $600 acknowledged in McClintock's deed to Reese to have been received in hand.

Wherefore the decree is reversed and the cause remanded with leave for the complainants to bring the mortga-

*Chancery has jurisdiction to enjoin a recovery upon an assigned note against assignor, where a blank assignment has been filled up by the holder who holds it, where the facts and circumstances which limit the right of recovery to less than the nominal value of the note are complicated and involve principles of equity, and there has been no defence made at law.*

*Complainant enjoining the collection of a judgment, part consideration of the purchase of lands, who seeks a rescission, should bring all necessary parties before the Court.*

gees and all others interested in any lien upon the land, before the Court, as parties, and upon his failure to do so, to dismiss the bill without prejudice.

*Morehead & Reed* for appellant: *Curry* for appellees.

CASE.

*Case* 102.

May 8.

The case stated.