Judge Ewing
delivered the Opinion of the Court.
In 1819, Philip Buckner, for the consideration expressed in the deed, of five hundred dollars, conveyed to Amos O. Hanson two hundred acres of land—with covenant of general warranty. After Buckner’s death, this suit was brought against his executor and devisees, for an alleged breach of the warranty.
Defendants plead covenants performed—with leav® to set up any matter in defence, which could be specially pleaded, &c.
After the plaintiff had closed his evidence, on the trial, the Court, at the instance of the defendant’s counsel, instructed the jury, that “the evidence did not support “ the declaration, or show a good cause of action in “ him,” and also told the jury, that “there was no evi- “ dence of eviction by a superior, adverse claim what* “ ever,” “and that the jury should find as in case of a “ nonsuit.”
To these instructions and opinions, the plaintiff excepted; and has brought the case to this Court by writ of error.
The bill of exception states that, the plaintiff read, as evidence, the “record of a suit in chancery, in which John “ Brown was complainant, and the said Amos O. Han- “ son &c. were defendants,” by which said Brown had obtained a decree for the sale of, and had sold, one hundred acres of said two hundred acre tract conveyed to Hanson, in satisfaction of a debt due by Philip Buckner, the vendor, to said Brown, long prior to the date *252 of said deed, upon the ground that said deed was volun-, tary as to said one hundred acres.
The consideration q f- • natural affection is sufficient to sustain a covenant of yvavranty, at law or in equity: the relation of grandfather and grandchild is vyitjhin. the.principle; so’ held, that where a grandfather had conveyed land té the husband of his grand-dangh-' ter, as an ad vancement to her, he (the gran-, tee) might maintain his action Upon the covenant \yarranty, notwithstanding the conveyance was so far voluntary as to leave the land subject to the prior debt of the grantor.
*252 It is objected by the counsel for said devisees, that-the exhibits and depositions in said record, should not be regarded as. having been used on the trial in the Circuit-Court, but- only so much thereof as was competent to show the fact of eviction. We think otherwise. The record means the whole record, and embraces all the parts, of it which come under the denomination of the record, Which, by the repeated decisions of this Court, includes the exhibits, depositions and papers used on the trial, as well as the pleadings and decree. Although it, was com-, petent for the plaintiff to use only so much of said record a,s was necessary to. show an eviction, unless, said devisees had been parties, o.r were notified of the pendency of the suit; yet as, the bill of exceptions shows that the record whs read to. the jury, and no ob-. jection seems to have h.een made (a a,ny part of it, and the whole record is copied into this record as having-been read, we must conclude that the v>hole was read, and not a part of it. And if the exhibits, proofs and depositions in said record were read without objection, yve must regard all objections to them as waived, and treat them as a, part of the evidence upon which the instructions of the Circuit Court were predicated. 3 Bibb, 409; Devour v. Johnson.
Secondly: it is objected that if the whole of said re-, cord be regarded as used before the jury, that it defeats the plaintiff’s right of action on his warranty: because it shows, that said deed, as to the one hundred acres of said land sold by Brown, was voluntary and without consideration, and nothing could be recovered for a breach of the warranty; and that, if the deed be regar-i ded as. conclusive of the fact, that the valuable consideration meptioned on. its face, was given, their the recovery o.f Brown was unauthorized by law, and the eviction without paramount title, and po recovery can be had in that aspect of the case.
It appears that Philip Buckner, the grand-father of Hanson’s wife, conveyed said one hundred acres to him, as a gift, by way of advancing his grand-daughter.
The amount of the consideration with interest is the sum recov erable, upon a breach of warranty; and wherp natural affection was in fact the inducement, but a money consideration is stated in the deed, held, that the latter shall be taken a3 the grantor’s val paflón, & determine the sum to. be recovered, as. tho’ it was the. actual consider-^, ation.
those debts, tha Voluntary con^ veyancesare void as to creditors; and in relation to’ debts preexisting, neither the amount of the debts, the value of the property, northe intention: is material, as to , law makes the conveyance void; as to subsequent debts, the creditor must show circumstances justifying the presumption that the intent of the conveyance was fraudulent.
It is well settled, that the consideration of natural affection is sufficient to sustain a covenant, and will warrant a recovery, in law or equity. The relation of grandfather and grand-daughter is within the principle, as was expressly settled by this Court, in the case of Stovall and wife v. Barnett, 4 Lit. Rep. 207. And we cannot doubt, that the grand-son-in-law—especially when the conveyance, as in this case, was made to him by way of advancing the grand-daughter—falls within the same principle.
If therefore matters not ydiether the warranty was founded on a valuable, or good consideration. The plaintiff’s right of action for a breach thereof, is the same. And tho’ the conveyance may be so far voluntary, as to subject the property conveyed tp. the demands of creditors, the warranty, between the parties, is good, and obligatory, to the same extent as if founded on a valuable consideration.
If it had been a deed of gift with covenant of warranty, the value of the land at the time of the gift, v?yith interest thereon, would form the criterion of damages. 4 Lit. Rep. 207.
As it has been long since settled, that the value of the land, to be estimated by the consideration, when a valuable one is expressed on the face of the deed, is, with interest thereon, the criterion of damages, on a breach of warranty, it may have been, and was, probably, intended by the donor in this case, to insert a valuable consideration as his estimate of the value of the land conveyed; and consequently, the extent of his responsibility in case of the donee’s eviction.
It is next objected, that the recovery of Brown was not justified by the proof and the law; and therefore the eviction was not rightful, or upon a paramount claim.
The evidence shows that Philip Buckner was indebted to Brown, as well as others, at and before the date of said conveyance; and that said deed, as to the one hun *254 dred acres sold, was founded upon no other consideration, than the natural love and affection of said Buckner to his grand-daughter. Without detailing more of the testimony, we would remark, that if a party be indebted at the time of a voluntary conveyance to a child or grand-child, such conveyance is presumed to be fraudulent, as a conclusion of law, as to those debts.
A decree divesting a grantee of jiis title and right pf possession is /sufficient proof of an eviction, to sustain his action ty,°wHhoffipíoof of an actual re ynoval from the land—as is a judgment of eviction, without an pctual execution pf the ha. fa.
And the presumption of law as to prior debts, does not depend upon the amount of the debts, the intentions, or circumstances of the party conveying, or the amount of property conveyed. The law will not permit an inquiry to be made into these matters, or give to them any weight or influence. They might tend to embarrass the creditor and involve his debt in doubt and uncertainty. The law has, therefore^ wisely cut off all enquiry, and treated all voluntary conveyances and settlements founded upon no other consideration than that of natural affection or blood, as nullities, whenever they stand in the way of preexistent debts.
But subsequent creditors would be required to go so far, and only so far, in showing indebtedness on the part of the donor, as would raise a reasonable presumption of a fraudulent intent. Read v. Livingston. 3 John. Chy. Rep. 500.
As Brown’s debt, for which the land was sold, existed at the time of the conveyance, it overreached the conveyance, and the land conveyed was properly subjected to its payment.
We also think that, the circumstances proven are amply sufficient to show an eviction. The land was sold under a decree of the Court; purchased by Payne; the report of sale returned to, and confirmed by the Court; a deed ordered to be made to him, and possession yielded up to him by Hanson, who afterwards purchased and took possession under his title. We cannot conceive what more, in reason or common justice, could be required. Hanson was not bound to wait till he was forced out, by the order of the Court. To all. reasonable purposes, his eviction would be complete by the sale under a decree, and the acceptance and confirmation of the report of sale by the Court, as it would be by a *255 judgment in ejectment, without actual removal from the possession by habere facias possessionsm.
Estoppels are not ¡^owed in doubtful oases, available,'3 must be taken advantime,°andnin'*» legitimate mode: i. e. by demurrer, where the ?st0PPel appears in the record;by pleading it spcaially» .whe“ 11 does not, and by objecting to evie™° where party is estopped ao^'othewise the estoppel is wa've<J-
^atltwa/mndo upon a consideration of $500, and contains a covenant of warranty. A prior creditor of the grantor, npon proof that the deed was in fact voluntary—natural aifection being the only inducement—subjects the land, by decree, to the payment of the grantor’s debt; and the grantee sues the grantor’s heirs upon the warranty: held, that the grantee is not estopped by the recital, from showing the true consideration (as the creditor had done) and that the recovery, by which he lost the land, and the co venant of warranty was broken, was a legal recovery.
But another question, of more doubt and difficulty of solution, has suggested itself to our reflections, in the examination of this record: that is, whether the plaintiff was not estopped, by the consideration expressed in the deed, from proving the facts necessary to show that, Brown’s recovery, on the ground of the deed being voluntary, was rightful; or whether he can, consistent with his own deed, prove that the conveyance was voluntary as to the 100 acres; which proof alone will make out the rightful recovery of Brown, which is essential to his . , ° „ , . , right of recovery on his warranty. In relation to the record as now presented, we have no
. difficulty. As an estoppel concludes a party from proving the truth, it should never be looked on in a very favorable ; J light, or permitted to operate in doubtful cases, or where the party relying upon it has not brought himself strictly within the rules which justify its application. Hence, it has been determined, “to make an estoppel operative, it must be taken advantage of in proper lime, and in a legitimate manner.” If the matter of estoppel appears on the record, it may be taken advantage of by demurrer, and when it does not appear, it should generally be specially plead and relied on. 2 Marsh. 144. And we would conclude that, when, from the nature of the case, it cannot be properly pleaded, but applies properly to the exclusion of testimony, that the testimony which the party is so estopped from using, should be objected to on that ground; and if not objected to, the objection must be regarded as waived; in the same manner as if incompetent testimony, or an inferior grade, is used when a superior grade is accessible, without objection, the objection is regarded as waived. No estoppel was pleaded, in this case, nor any objection made to the testimony adduced. It is therefore too late to raise the objection here.
But as the objection may arise upon the return of the cause to the Circuit Court, on a second trial, we *256 have concluded to settle it now, on principle. We havé therefore, with some difficulty, come to the conclusion, that the estoppel cannot be made to operate in this case.
A purchaser in possession, under an executory contract, whose vendee sells to another, in violation of the contract, is not es-topped to deny" the title under which he entered. lie may buy an adverse title and set it up against his vendor. So also, where there is a decree for the vendorf'infiivor of a stranger.
Hanson has been made the passive instrument of fraud upon Brown, a creditor, without intention or blame on his part: for it cannot be presumed, that when he accepted the donation, he had any knowledge of Brown’s debt, or of any intention on the part of Buckner to defraud him. And indeed, there is no ground to believe that Buckner had any such intention at the time of the gift. Yet the gift is rendered void by operation of law» Hanson has lost 'his land, and his warranty has been broken, and the proceeds has gone to the payment of Buckner’s debt. Hanson has had no agency in producing this state of things. It has been brought about by the default of the defendants, the devisees, and their ancestor, in failing to pay the debt of Brown. Shall they be permitted to rely upon an estoppel to defeat a recovery on their own warranty, broken by their own default? We think they cannot. Though they have not themselves “placed the matter at large,” they have mused it to be placed at large by their own default, and should no more be permitted to rely upon the estoppel than Brown, the creditor, who did place it at large. And it is well settled, that one is not bound by an estoppel, when his adversary has placed at large the matter of estoppel.
It has been held that, a vendee in possession, whose vendor conveys to another, in violation of his contract, is absolved, and not estopped to deny the title under which be entered, and may purchase and defend under any other claim. So when there is a decree against the vendor for the title, at the suit of another, whether it be for the benefit of the vendee or not. 7 Mon. Rep. 104, 659. Why is the vendee discharged from the estoppel? Because of the default of the vendor.
So in this case, though the vendor has not sold the land, yet his default in paying Brown’s debt, has caused it to be sold.
Suppose Buckner had made a prior sale of the same land to Brown, and had executed his bond for a conveyance, and afterwards had given the land to Hanson, but *257 'executed a deed purporting to be for valuable consideration, without notice of the prior sale; and Brown had obtained a decree in Chancery, compelling Hanson to convey the land to him, upon the ground that the conveyance was voluntary—could Buckner or his representatives estop Hanson from proving these facts? Surely not. Buckner was first in default, and caused the land to be recovered by his default, and has placed the matter at large, and thereby exonerated Hanson from the estoppel» The case is analagous in principle with the one before the Court. The only thing insisted on by Hanson, is that ho be permitted to prove the same matters that were proven by Brown, by way of showing his rightful claim to the property, and which he has been forced to unfold and place at large by the default of Buckner and his representatives. lie only asks to follow in the wake of Brown, to enter where he has been forced to enter by the defalcation of the warrantor and his devisees-. All he claims to prove is, that Buckner was indebted to Brown, when Ms deed was made, and that Ms land was taken to pay it by Brown, who had a legal right to show that the deed was valuntary* whether it purported to be so or not, on its face: and that Brown did show it, and that he was thereby evicted from the land.
It is therefore considered by the Court, that the judg¿ ment of the Circuit Court be reversed, and the cause re^ manded, that a new trial may be granted,