Martz v. Pfeifer, &c.

CASE 109—EQUITY—JANUARY 17, 1883.

## Martz v. Pfeifer, &c.

### APPEAL FROM CAMPBELL CIRCUIT COURT.

1. The doctrine that a return of *nulla bona* must, in the absence of
   grounds for an attachment, be alleged and shown before a court
   of equity will entertain a petition to set aside a voluntary or
   fraudulent conveyance to satisfy a mere legal demand, is well
   settled by this court.

2. But the Civil Code of Practice, in order to give the creditor a more
   speedy remedy for subjecting property fraudulently conveyed, or
   about to be so conveyed, authorizes an attachment upon the prop-
   erty, although no judgment has been obtained against the debtor.

3. The remedy for the creditor in such case is as ample as the jurisdic-
   tion of a court of equity upon a return of *nulla bona.*

4. A lien is created upon the property by the attachment.

C. J. HELM FOR APPELLANT.

1. A conveyance from a husband directly to his wife, without the inter-
   vention of a trustee, is void at law, and void in equity as against
   prior creditors. (Scarborough v. Watkins, 9 B. Mon., 545; Mara-
   mon v. Maramon, 4 Met., 87; 3 Mon., 34; 4 Dana, 141; 12 Bush,
   459.)

2. An action by a surety against his principal is originally cognizable in
   equity. (7 Mon., 544; 3 B. Mon., 424; 10 *Ib.*, 80; 2 Bibb, 274.)

3. A judgment and return of *nulla bona* is not necessary if the petition
   contain the allegations required by subsection 2 of section 194, Civil
   Code, and attachment be sued out under it, and levied upon the
   property conveyed as the property of the grantor in the voluntary
   conveyance. (Scott v. McMillan, 1 Litt., 305; Anderson v. Bradford,
   5 J. J. Mar., 73.)

Martz v. Pfeifer, &c.

4. In Kentucky a return of nulla bona is not necessary in a purely legal claim to maintain an action to set aside a fraudulent or voluntary conveyance. (Milward v. Cochran, 7 B. Mon., 344; Evans v. Ray, Ky. Law Rep.; 78 Ky., 246.)

JUDGE PRYOR DELIVERED THE OPINION OF THE COURT.

The appellant, Jacob Martz, had paid as surety for the appellee, H. Pfeifer, several hundred dollars, and instituted his action in equity in the Campbell circuit court, asking judgment for the amount, and also seeking to subject to the payment of the indebtedness certain real estate that had been conveyed by the appellant to his wife (a co-appellant) Margaret, for no other consideration than that of love and affection.

He alleged that the conveyance was made subsequent to the creation of the debt, and was fraudulent, &c.; further alleged that his claim was just—the amount he ought to recover; that the defendant, Henry Pfeifer, had no property in the state subject to execution, or not enough to satisfy plaintiff's claim, and that the collection thereof would be endangered by delay in obtaining judgment and a return of no property found. He asks for an attachment against the property of the defendant, Henry Pfeifer, and that the conveyance to his wife be held fraudulent, &c. There was no motion to transfer the case to the ordinary docket, and the case proceeded in equity to a judgment in favor of the appellant for his debt and interest; but the court refused to hear any question as to the alleged fraud in the conveyance made to the wife, and sustained a special demurrer to that branch of the case, for the reason, as counsel states, that before the chancellor could subject the property, there must be an execution upon his judgment with a return of no property found.

The doctrine that a return of *nulla bona* must be alleged and shown before a court of equity will entertain a petition to set aside a voluntary or fraudulent conveyance in order to satisfy a legal demand, is too well settled by this court to admit of controversy, and while some of the profession may doubt the propriety of the rule, and, in fact, insist that it has long since been abolished by statute, we will not pursue the inquiry further than to say that the repeated adjudications of this court recognize, in express terms, not only the existence but the wisdom of adhering to this equitable doctrine. One of the principal reasons for the chancellor disclaiming such jurisdiction when the demand against the debtor is purely legal is, that the remedy at law is ample for coercing payment, and the conveyance being good as between the parties to it, that remedy must be exhausted before the rights of third parties will be interfered with for the purpose of satisfying the creditors' demand.

The framers of the Code of Practice now in force, as well as of the Code preceding it, seeing the necessity of giving to the creditor a more speedy remedy for subjecting the property of the debtor fraudulently conveyed, or about to be fraudulently conveyed, provided a remedy by an attachment that can be obtained, issued, and levied upon the property of the debtor that is about to be conveyed, or has been conveyed, with a fraudulent intent to cheat or hinder the creditor in the collection of his debt. In such a case, if the attachment has been discharged, the debtor, if he has been subjected to expense and costs in the defense of the attachment, may proceed upon the bond of the attaching creditor, and have full indemnity for the wrong done him; and the third party whose property has been seized under the attachment, if not allowed to proceed on the bond, has

his remedy by action to recover by reason of the wrongful seizure of his property purchased in good faith of the debtor. The remedy for the creditor in such case is as ample and complete, when the property has been fraudulently conveyed, as the jurisdiction of a court of equity upon a return of no property. A lien is created on the property upon which the attachment is levied, and this gives the court the jurisdiction over it. The right to recover a judgment for the debt must appear from the statements of the petition, and the petition or affidavit must contain statements authorizing the issuing of the attachment, but no lien is created on the property of the debtor, or that fraudulently conveyed by him, by reason of the allegations of the petition, but by the levy of the attachment, and its efficacy depends upon the creditor recovering a judgment and sustaining the grounds for the attachment. The rule that a chancellor will not interfere because the remedy may be complete at law is not unreasonable, when we consider that others than the creditor and debtor are to be affected by the litigation. Is it just or equitable to permit the creditor, who has not even established a valid claim against the party alleged to be the debtor, to file his petition in equity asking for a judgment, and to subject property that has been conveyed to, and in the possession of others, upon the ground that the title and possession is fraudulent, and in this manner create a *lis pendens* affecting the property as long as the litigation continues, without even a bond to the debtor, or a seizure of the property in the hands of the third party entitling them, or either of them, to indemnity in the event the charge is wrongfully made? The purchaser from the debtor is kept in suspense, and subjected to expense and costs as a defendant awaiting the termination of the action establish-

ing, first, the creditor's claim, and then the grounds for his equitable relief (the fraud), with his property in lien by reason of the *lis pendens*, and after a litigation for years in equity, and a judgment in favor of the debtor, both the debtor and his vendee are without remedy, except perhaps an execution for costs paid the clerk or sheriff. Compel the creditor to exhaust his common law remedy, or if he wishes to attack the conveyance made by the debtor sooner, require him to obtain his attachment, when a bond must be executed as an indemnity, at least to the debtor, and a right of action at law in the vendee of the debtor for the damages he has sustained by reason of the levy upon his property. These reasons, in addition to those generally understood, it seems to us, are sufficient for the continued recognition of this wise and conservative rule, with reference to the jurisdiction of a court of equity. The facility with which charges of fraud could be made, and the harmless results to the party making them if he fails of success, would, under the liberal rule contended for, invite a speculative litigation against the debtor and his vendees that would increase and multiply a vexatious litigation against those who, in a majority of instances, have no other interest in the result than the expenditure of money and loss of time in the defense of their title to property honestly acquired. In this case the claim of the appellant was purely legal; his remedy was complete at law, but he had gone into a court of equity asking a judgment for his debt. The chancellor had the right to render a judgment for the debt, as no motion was made to transfer the case to the common law side of the docket. The ground for the attachment had been alleged, the attachment issued and levied on the property conveyed. While the allegations of the petition did not give the court

jurisdiction to sell the property if fraudulently conveyed, the statements in the petition or affidavit authorizing the issuing of the attachment, and its levy upon the property, gave the jurisdiction. The questions were, first, is the plaintiff entitled to a judgment? If so, did the affidavit authorize the issuing of the attachment? Has it been controverted? If not, and the property in possession of another has been levied on as the property of the debtor, that party should be brought before the court, and then it is proper to hear proof, and determine whether or not the conveyance is fraudulent. In this case the wife was before the court, and while the prayer to cancel the deed may have been properly stricken out, it was the duty of the court to hear the case under the attachment. It is the levy of the attachment in such a case that gives the court jurisdiction to sell the property, and not what is alleged in the petition.

The judgment is reversed, and cause remanded for further proceedings. (Haskell v. Winn; Napier v. Yager; Evans v. Ray, 3 Ky. Law Reporter.)