CASE 6—ACTION OF VINNEDGE & CO AGAINST JAMES O'KANE, &C., TO
'SET ASIDE A CONVEYANCE AS FRAUDULENT—MARCH 10.

# O'Kane, et al. v. Vinnedge, et al.

### APPEAL FROM BOONE CIRCUIT COURT.

.JUDGMENT FOR PLAINTIFFS AND DEFENDANTS APPEAL. AFFIRMED.

PLEADING—RETURN OF NO PROPERTY—APPLICATION OF STATUTE TO
.PENDING ACTIONS—CONSTRUCTIVE FRAUD.

Held: 1. An averment that the conveyances sought to be set aside
"were without consideration, and made for the purpose of cover-
ing up and concealing the ownership of the property," accom-
panied by the averment that the grantor "has since these pre-
tended conveyances claimed to be the owner of the property,
and used and controlled it," amounts in effect to a charge that
the conveyances were made with fraudulent intent.

2. The act on March 16, 1896, now Kentucky Statutes, sec. 1907a, pro-
viding that an action to set aside a conveyance as fraudulent
may be maintained without a return of "no property," being re-
medial in its nature, governed the proceedings in actions then
pending from time it went into effect, and gave the courts juris-
diction to set aside fraudulent conveyances in such actions with-
out return of "no property."

3. A voluntary conveyance is conclusively presumed to be fraudulent
as to prior creditors of the grantor, but, to authorize a subsequent
creditor to assail the conveyance, he must show additional cir-
cumstances justifying the presumption of an intent on the part
of the grantor to defraud his creditors.

4. The fact that a creditor had knowledge when his debt was created
of the existence of a conveyance executed by the debtor with in-
tent to defraud creditors does not preclude him from assailing
the conveyance.

5. Where a debtor conveyed property to his sister, who then conveyed
to his wife, the transaction was fraudulent as to his creditors;
the evidence of his alleged indebtedness to his sister being unsat-
isfactory, and it being manifest that she did not receive any part
of the recited consideration from his wife, and that she did not
even understand the character or purpose of the conveyance.

6. It was not error to direct the commissioner to sell together two

lots described by separate surveys, it appearing that they were inclosed in one boundary, and that it was to the interest of all parties that they should be sold together.

S. W. TOLIN FOR APPELLANT.

J. S. GAUNT OF COUNSEL.

1. The plaintiff's demand was purely a legal one, and they can not invoke the aid of a court of equity to enforce it.    Plaintiffs should first have obtained a judgment and return of "*nulla bona*," or if they desired to proceed against the property at the outset, then they could only do so by suing out an attachment as required by the Code.

2. The judgment of the lower court is not sustained by the pleadings.

3. The petition alleges that the several conveyances were voluntary, without consideration, and made to cover up and conceal the title of James O'Kane, but does not allege, in direct terms, that they were made with fraudulent intent to cheat, hinder and delay the creditors of the vendor.

### AUTHORITIES CITED.

Sec. 194, Civil Code of Practice; sec. 39, Civil Code of Practice; 10 Ky. Law Rep., 710 Kyle v. O'Neill; 9 Ky. Law Rep., 391, Keller, &c., v. Stanley; 78 Ky., 11, Hall & Head v. Crogan; 19 Ky. Law Rep., 366, Redwine v. Underwood; sec. 126, Ky. Civil Code; 15 Law Rep., Ky., 49, White's Admr. v. L. & N. R. R. Co.; Sub-sec. 7, sec. 194, Ky. Civil Code; 7 Bush, 586, Place v. Rhem, &c.; 83 Ky., 323 and 324, Little, &c., v. Ragan Bros., &c.; Art. 2, sec. 1910, chap. 54, Ky. Stats.; 80 Ky., 600 Hartz v. Pfeifer, &c.; 8 Ky. Law Rep., 601, Johnson v. Skaggs, &c.; 8 Ky. Law Rep., 777, Garvey's Ex'r. v. Garvey, &c.; 12 Ky. Law Rep., 866, Mills v. Hunt; 14 Ky. Law Rep., 341, Mer. Nat. Bank, &c., v. Sears; 19 Ky. Law Rep., 716, Terry, &c., v. Swinford.

ROBERT P. HARGETT AND JOEL C. CLORE, ATTORNEYS FOR APPELLEE.

1. The failure of the circuit clerk to issue the attachment until two days after the petition was filed and the summons was issued thereon, does not render the attachment void as it will not authorize dismissal of petition. L. & N. R. R. Co. v. Smith, 87 Ky., 501 and 506; Savings Bank of Louisville v. McAllister, 83 Ky., 149.

2. No motion was made to discharge the attachment, but instead all the defendants entered their appearance and filed answer and

went to trial. Duncan v. Brown, 15 B. Mon., 196 and 197; Allen v. Brown, 4 Met., 342; Shaw v. Shaw, 15 R., 592; Barto v. Barton, 80 Ky., 212.

OPINION OF THE COURT BY JUDGE BURNAM—AFFIRMING.

On the 28th day of May, 1896, appellees, as surviving partners of the firm of Vinnedge, Schlosser & Co., instituted a suit in equity against appellants, in which they sought a personal judgment against James O'Kane on an account for ice alleged to have been sold and delivered to him; and they asked to have set aside the conveyance of four tracts of land by James O'Kane and his wife to his sister, Jane McGann, on the 25th day of October, 1894, and which she subsequently conveyed on the 29th of April, 1895, by general warranty deed, to Julia O'Kane, the wife of the appellant James O'Kane, on the ground that these conveyances were voluntary, without consideration, and made for the purpose of covering up and concealing the title and ownership of the property so conveyed, at a time when James O'Kane was largely indebted to divers persons. It is further alleged that he did not intend to, or in fact, vest the appellant Jane McGann with any title whatever; that he at all times since said pretended conveyance claimed to be the owner of all of said property; and that he had represented to appellees and others that his sister, Mrs. McGann, had no interest therein, and never did have any. Appellees also sought an attachment against the property of James and Julia O'Kane upon the ground that they were nonresidents. At the time the petition was filed a summons was issued against Jane McGann and the other resident defendants, and the clerk of the court issued an order of attachment, directing the sheriff to attach the property of the defendants, which was on the next day

levied by him on three of the four tracts of land sought to be subjected to appellees' debt.   On the 30th day of May, thereafter, the nonresident defendants, James and Julia O'Kane, were warned to appear in the court on the first day of its next term, and an attorney was appointed to correspond with them.   At the succeeding August term of the Boone Circuit Court the appellants filed a general demurrer to the petition, which was overruled.   They thereupon filed an answer, in which James O'Kane denied liability for the account sued on, and also denied the allegations of the petition that the conveyance made by him and his wife to Mrs. McGann, and by her back to Mrs. O'Kane, were made for the purpose of covering up or concealing title to the property conveyed by the several deeds, or that they were not *bona fide* conveyances, and alleged that the claim sued on was created subsequent to the making, execution, and recording of the conveyances to Mrs. McGann, and that appellees had both actual and constructive notice of the making and recording thereof.   No reply was filed to the affirmative averments of the answer. The tral in the lower court resulted in a personal judgment against James O'Kane for the claim sued for, and a decree vacating the deeds as fraudulent, and subjecting the property to the payment of appellees' demand.

A number of errors are relied on for reversal.   First, it is insisted that the averments of the petition were insufficient to support the attack made upon the conveyances from James and Julia O'Kane to Jane McGann, and subsequently from Jane McGann back to Julia O'Kane, as it failed to allege that these conveyances were fraudulent, or made with a fraudulent purpose of cheating, hindering, or delaying the creditors of James O'Kane; and, second, that the petition showed that the alleged account on which

the suit was brought was not an existing liability at the time of the conveyance to Jane McGann, within the meaning of section 1907a of the Kentucky Statutes; that no return of *nulla bona* thereon was alleged and that the right to maintain the action was based solely upon subsection 1 of section 194 of the Civil Code, and the construction given to this provision of the Code in Burdett v. Phillips, 78 Ky. 246, and in Martz v. Pfeifer, 80 Ky. 600, to the effect that a return of *nulla bona* is not necessary, in a purely legal claim, to set aside a fraudulent or voluntary conveyance. It is insisted: First, that the averments of the petition do not amount to a charge of fraud; and, second, that, as it appeared that the attachment was issued and levied before a warning order had been made, the attachment was void, and no *lis pendens* was created thereby.

The statute does not prescribe the express language in which the charge of a fraudulent conveyance is to be couched; and while it is usual, in pleadings of this character, to allege in direct terms that the conveyance was made "with a fraudulent intent to cheat, hinder and delay the creditors of the vendor," and especially the party complaining, yet it seems to us that the charge in the petition that "the conveyances were without consideration, and made for the purpose of covering up and concealing the ownership of the property." when accompanied by the further averments that "appellant had since these pretended conveyances claimed to be the owner of the property, and used and controlled it," amounts, in effect, to a charge that the conveyances were made with a fraudulent intent, and was sufficient to support the cause of action.

Before the demurrer was filed and overruled, section 1907a of the Kentucky Statutes had become a law, under

the act of March 16, 1896. It provides that: "Hereafter in this Commonwealth it shall be lawful for any party who may be aggrieved thereby, when any real property has been fraudulently conveyed, transferred or mortgaged, to file, in a court having jurisdiction of the subject matter, a petition in equity against the parties to such fraudulent transfer, conveyance or mortgage, or their representatives or heirs, alleging therein the facts showing their right of action, and alleging such fraud, or facts constituting it, and describing such property, and, when done, a *lis pendens* shall be created upon the property so described, and said suit shall progress and be determined, as other suits in equity, as though it had been brought on a return of *nulla bona* as has heretofore been required. All laws or parts of laws in conflict herewith are hereby repealed." And the effect of this amendment to the statute is to dispense with the necessity of a judgment and return of *nulla bona* as a basis for proceedings of this character, and, being remedial in its nature, governed the proceedings in this case from the time it went into effect, and vested the court below with jurisdiction to try all of the issues made by the petition and answer, as the Legislature may, in its discretion, repeal or enact laws relating to the remedy alone. See Grundy v. Com., 12 Bush, 350.

Appellees' contention rests upon the averments that the conveyances to Mrs. McGann, and from her to Mrs. O'Kane, were not *bona fide,* and were not intended to divest O'Kane of title; that they were a mere device resorted to by the grantor and grantees to enable appellant to cover up and hide his property. If a party be indebted at the time of a voluntary conveyance of his property, such conveyance is presumed to be fraudulent as to those debts; and this presumption, as to prior debts, does not depend

upon the intentions or circumstances of the party convey-
ing, or the amount conveyed. The law will not permit an
inquiry to be made into these matters, or give them any
weight or influence. As to subsequent debts, the creditor
who assails a voluntary conveyance must show in addition
circumstances justifying the presumption that the intent
of the conveyance was fraudulent, before the land con-
veyed could be properly subjected to the payment of such
debts. See Hanson v. Buckner's Executor & Devisees, 4
Dana, 251, and Enders v. Williams, 1 Metc. 346. "It is the
intent and purpose with which the grantor acts which
render the conveyance fraudulent, and this must be de-
termined by the facts of each particuler case." See Bank
v. Payne, 86 Ky. 446, 8 S. W. 856; Beatty v. Dudley, 80 Ky.
381; and Slater v. Sherman, 5 Bush, 206. And the mere
fact that a subsequent creditor knew of the existence of
such fraudulent conveyance at the time of the creation of
his debt would not preclude him from assailing them, if it
became necessary to secure the payment of his debt.

It is the contention of appellant James O'Kane that in
the transactions which led to the creation of appellees'
debt he acted only as agent for his sons, who were doing
business under the firm name of O'Kane Bros., and that he
is not personally bound therefor. From a careful con
sideration of all of the evidence bearing upon this question,
we have concluded that it does not support this conten-
tion, and that he is personally liable for the balance due
appellees. And we are of the opinion that the purpose of
the conveyance of the real estate to his sister, Mrs. Mc-
Gann, and her subsequent conveyance of the same prop-
erty to his wife, the appellant, Julia O'Kane, was to cover
it up and put it beyond the reach of his creditors. The
evidence of his alleged indebtedness to his sister is wholly

O'Kane, *et al.* v. Vinnedge, *et al.*

unsatisfactory; and it is manifest that Mrs. McGann did not receive a dollar of the recited consideration from Mrs. O'Kane, and that she did not even understand the character, purpose, or intention of the conveyance. This opinion is fortified by the fact that O'Kane had several years before conveyed his Cincinnati property to his sister in the same way, and had never deemed it of sufficient importance, so far as she was concerned, to communicate the fact to her.

It is also complained that the judgment is erroneous in directing the master commissioner to sell lots 2 and 3 together, as they were described by separate surveys; but it appears that these two parcels of land were inclosed in one boundary, and were really treated as one tract, and that it was beneficial to all parties that they should be sold together.

Upon the whole case, we are of the opinion that there has been no error prejudicial to the substantial rights of appellants. Judgment affirmed.

Petition for re-hearing filed by appellants and overruled.