CASE 30.—ACTION BY MAY HUNT AGAINST Q. E. V. NANCE
TO RECOVER LAND, INVOLVING ALLEGED
FRAUDULENT CONVEYANCES.—March 8.

# Hunt v. Nance, &c.

Appeal from McCracken Circuit Court.

W. M. REED, Circuit Judge.

Judgment for defendants. Plaintiff appeals.
Affirmed.

1. Actions at Law—Pleading asking Equitable Relief—Transfer
to Equity—Jurisdiction—Where an action, originally brought
in ejectment, was so changed by the pleading as to make it
one for equitable relief, it was proper for the court, on the
motion of the party seeking such relief, to transfer it to the
equity docket. While in many cases courts of law will afford
relief against fraud or mistake, only a court of equity has
jurisdiction to cancel or declare void, a deed or other instru-
ment, whether upon the ground of fraud or mistake.

2. Deeds—When Recordable—A deed properly made and certified
during the term of one clerk of the county court, though not
lodged or filed for record during his term, may be lodged
for record and recorded by his successor.

3. Purchase at Decretal Sale—Notice of Prior Sale—Admission in
Pleading—Where a purchaser of land at decretal sale seeks
to set aside a deed held thereto by a prior purchaser, for want
of notice of the record of said deed, an averment in her
pleading, that, "she did not know of the existence of the
alleged deed until shortly after it was recorded, and did not
discover it until a short time before her attachment was
levied on the land, under which she made said purchase,"
was an admission that she had actual notice of the prior
deed, and such notice would defeat her purchase even if
the recording of the deed was invalid.

4. Agreed Interlineations in Unrecorded Deed—Effect—Where a
deed was made by S. to N., duly acknowledged and delivered,
conveying N. a fee simple estate in the land, the fact that

Hunt v. Nance, &c.

before it was recorded certain "interlineations" were made in it, the effect of which was to make it convey to N. a mere life estate, with remainder to her children, which was admitted to have been done for the protection of the grantee's infant children by a former husband, such change did not affect the deed as between S. and N., or discredit the genuineness of the conveyance.

5. A voluntary conveyance by a brother to a sister is not fraudulent as to a subsequent creditor of the grantor, unless actual fraud is shown.

D. G. PARK, attorney for appellant.

## QUESTIONS INVOLVED.

The questions involved on this appeal are:

1. Did the court err in transferring the action to the equity side of the docket and in refusing to re-transfer it to the law side of the docket?

2. Did the court err in sustaining the deed to appellee and in dismissing the action?

3. Questions arising on the relevancy and competency of evidence, under the issue on the validity of the deed.

## ACTION ERRONEOUSLY TRANSFERRED TO EQUITY.

1. Inasmuch as the action was properly brought at law and the issues of fact properly triable before a jury, the court erred in transferring it to the equity side of the docket. (95 Ky., 135-138; Civil Code, sections 10, 11 and 12).

2. Such erroneous action on the part of the court is a reversible error; and has not been waived in the question at bar. (90 Ky., 642; Walker v. Leslie. 7 Bush 1; Creager v. Walker. 6 R. 222; Betz v. Newport P. M. A.)

3. "In ejectment to recover the possession of real property, the defendant may defeat recovery by showing the plaintiff's deed was made to him for the purpose of hindering, delaying and defrauding the creditors of defendants, or for any other illegal purpose." So may appellant as purchaser. (Newell on Ejectment 650, section 11).

## AUTHORITIES CITED.

On plea of bankruptcy.   25 Ky. Law Rep., 626-7-8-9, Sanderson

v. Hunt. On transfer to equity, Civil Code sections 10, 11, 12; 95 Ky., 135-138, Carder v. Wisenburgh; 90 Ky., 642, Walker v. Leslie; 7 Bush 1, Creager v. Walker; 6 Ky. Law Rep., 222, Betz v. Newport P. M. A. Issue of fraud triable in ejectment, Newell on Ejectment, 650 section 11; 85 Ky., 385-6, Scott's Exrs. v. Scott; 19 Ky. Law Rep., 208-9-10, Howard v. Duke. No authority in clerk Graham to record the deed, Ky. Stats. sections 509, 510, 515; 9 Ky. Law Rep., 522, Cheny v. American German National Bank; 2 Devlin On Deeds (2 Ed.), section 645; Meechem on Public Offices and Officers, P. 17 section 38 and Note 4; 83 Ky., 70-74. Deed actually fraudulent, 85 Ky., 404-5-6, Brown v. Connell; 83 Ky., 325-6-7, Little v. Ragan Brothers; 21 Ky. Law Rep., 1553-4, O'Kane v. Vinnedge; 19 Ky. Law Rep., 208-9-10, Howard v. Duke.

CRICE & ROSS for appellees.

### AUTHORITIES CITED.

1 Transfer to equity in cases at law is proper where equitable issues are made. (Sub-section 1 of section 6 of the Civil Code; Story's Equity Jurisprudence, 12th Ed., Vol. 1, section 184; sub-section 4 of section 10 of the Civil Code; Reese v. Walton 4th B. M. 513; O'Connor v. Henderson Bridge Co., 95th Ky., 693; Wimmer v. Ficklin 14th Bush 194).

2. It is the duty of county clerk to record deeds when lodged in their office for record although it had been executed and acknowledged before the commencement of their term of office when the acknowledgment is properly certified. (Ky. Statutes, section 509, 510 and 511).

3. When a subsequent purchaser assails a voluntary conveyance the burden is on him to show actual fraud. (O'Kane et al v. Vennedge et al 108 Ky., 34).

OPINION BY JUDGE SETTLE—Affirming.

This appeal involves the title to 80 acres of land in McCracken county which the lower court adjudged to be the property of appellees, though this action was instituted by appellant to recover it. As originally brought the action was one of ejectment, but, upon the filing of the answer and other subsequent

pleadings, it became a case of which only a court of
equity could take cognizance. Stripped of all irrele-
vant matter, the answer as amended contained a
denial of appellant's title and asserted title in
appellees to the land in controversy by purchase and
deed from T. J. Sanderson, the former owner, accom-
panied by actual and continuous possession, upon
their part, of the land from the date of the purchase.
The affirmative allegations of the answer were
traversed by reply, in which, as well as by amended
petition, the deed from Sanderson to appellees was
attacked by appellant upon the grounds that it was
a voluntary conveyance without consideration, made
in contemplation of Sanderson's insolvency, and to
defraud his creditors. The amended petition and
reply were controverted by answer and rejoinder
respectively. It appears from the record that San-
derson was indebted to appellant in a considerable
amount upon a judgment recovered by the latter
against him in the Graves Circuit Court for slander;
that executions had duly issued on the judgment and
been returned "no property found," as to the greater
part thereof. Furthermore, that after the return of
the executions appellant instituted a second action in
the same court against Sanderson to enforce the
payment of the judgment, in which she procured an
attachment that was levied on the land in controversy.
The attachment was sustained by judgment of the
court, and the land sold in satisfaction thereof, at
which sale appellant became the purchaser. The sale
was confirmed by the court, and later appellant
received through the court's commissioner a deed to
the land. Subsequently she brought this action to
obtain possession of the land. Appellees were in

possession of the land when it was sold under attachment, and also at the time of and before the institution of the slander and attachment suits; but they were not parties to either action.

After the issues were so changed by the pleadings as to make this a case for equitable relief, the lower court, on appellees' motion and over appellant's objection, transferred it to the equity docket. It is now insisted for appellant that this was error. Under the issues made by the pleadings, if the conveyance from Sanderson to appellees was not fraudulent as to the former's creditors, it unquestionably passed to appellees, or at least to appellee Q. E. V. Nance, the title to the land in controversy. Upon the other hand, if fraudulent, only a court of equity jurisdiction could properly adjudge it so. In many cases courts of law will afford relief against fraud or mistake, as where one is sued upon a note or other contract to which his signature was obtained by fraud. In such case he may in a court of law resist its payment on that ground. But only a court of equity has jurisdiction to cancel or declare void a deed or other instrument, whether upon the ground of fraud or mistake. By the change in the issues made by the pleadings such was the relief sought by appellant in this case, and, this being true, the transfer of the case to the equity docket was not only proper, but indispensably necessary. Section 6, subsection 1, and section 10, subsection 4, Civil Code Prac.; Story's Eq. Juris. (12th Ed.), Vol. 1, section 184; Reese v. Walton, 4 B. Mon., 513; O'Connor v. Henderson Bridge Co., 95 Ky., 633; 16 Ky. Law Rep., 244; 27 S. W., 251, 983; Wimmer v. Ficklin, 14 Bush., 194.

It is contended by counsel for appellant that the

chancellor erred in admitting as competent evidence the deed by which Sanderson conveyed the land in controversy to appellees, because it was acknowledged by the grantor before, and the acknowledgement certified by a deputy of the predecessor in office of the county clerk by whom it was recorded, and was not lodged in the clerk's office during the term of office of such predecessor. We do not think this contention is sustained by the statute. A deed that is made, acknowledged and certified according to law during the term of one clerk of the county court, though not filed or lodged for record during his term, may be lodged for record and recorded during the term of his successor in such office. Indeed, section 510, 511 of the Kentucky Statutes of 1903 make it the duty of the county clerk to record a deed when lodged in his office for record, if acknowledged and certified according to law, whether such acknowledgment was taken before and certified by his predecessor in office, a deputy of the latter, or any other officer authorized to take and certify acknowledgments of deeds, and without regard to whether such deed was or not lodged in the clerk's office during the term of office of his predecessor. The deed in question appears to have been properly acknowledged and certified, and in addition its execution and delivery are sufficiently established by other evidence appearing in the record to make it good, not only as between the parties, but also against a subsequent creditor or purchaser with notice of its existence. Moreover, its execution and delivery seem to be admitted by appellant, for we find on page 2 of her reply this averment: "She says she did not know of the existence of the deed alleged until shortly after it

was recorded and could not by reasonable diligence have discovered sooner, and she did discover it only a short time before her attachment was issued and levied on the land in controversy on August 27, 1900.'' The foregoing is an admission that appellant had actual notice of the existence of the deed relied on by appellees before her attachment was issued or levied on the land, and consequently before her purchase of it at decretal sale in satisfaction of her judgment. So, if the recording of the deed were invalid, and the instrument should be given no other effect than as a mere bond for title, the notice appellant received of its existence would defeat her purchase at the judicial sale, unless it was executed to defraud Sanderson's creditors. ''Notice to the creditor at any time before he may purchase affects his conscience, and he may be compelled in obedience to the equity evidenced by the bond or unrecorded deed to transfer the legal title to the party against whom he ought not in good conscience to hold it.'' Baldwin & Co. v. Crow, 86 Ky. 679, 9 Ky. Law Rep., 60, 7 S. W. 146; Low & Whitney v. Blincoe, 10 Bush, 331; Morton v. Robards, 4 Dana, 258; Lain v. Mortin, 63 S. W. 286, 23 Ky. Law Rep., 438; and Perry v. Trimble, 76 S. W. 343, 25 Ky. Law Rep., 725.

It is, however, further urged that, after the deed in question was acknowledged and delivered, and before it was recorded, certain interlineations were made in it, the effect of which was to make it convey Q. E. V. Nance a mere life estate in the land with remainder to her children, instead of a fee-simple title to her, as it was originally written, and that for this reason it should have been excluded as evidence. We cannot assent to this view of the matter. The

interlineations were frankly admitted by the parties, with the claim that it was done for the protection of the grantee's infant children by a former husband. If this be true—and it is uncontradicted—it is manifest that it did not affect the validity of the deed as between Sanderson and Mrs. Nance, or discredit the genuineness of the conveyance.   Whether the interlineations should be treated as mere surplusage, not affecting the conveyance as originally intended and made by the parties, or whether it invested the infants with any interest in the land, we need not decide. Obviously, the interlineations did not divest Mrs. Nance of all the title to the land, or restore the title to Sanderson, the grantor.

The only question left for consideration is, was there. any fraud in the conveyance?   The evidence clearly shows that the deed from Sanderson to appellee Q. E. V. Nance was eexcuted Otcober 21, 1892, acknowledged October 26, 1892, at once delivered to the grantee, and recorded January 4, 1898.  It was executed and delivered several years before appellant's suit for slander was brought against Sanderson, also before the alleged slanderous words concerning appellant were spoken by Sanderson, and recorded before appellant's second or attachment suit was filed. It was further shown by the evidence without contradiction, that, at the time of the execution and delivery of the deed Sanderson's only indebtedness was $300, and this sum he had borrowed to pay for the land when it was conveyed to him.   Its payment was assumed by appellee as the consideration of the sale and conveyance of the land to her.   The note was in fact paid by her through her father shortly after she received the deed.   So, according to the evidence,

there seems to be no doubt of the genuineness of the conveyance, or of the sufficiency of the consideration. But if this were not true, and the evidence authorized the conclusion that the conveyance, being from a brother to his sister, was purely voluntary and without consideration, it would not necessarily make it fraudulent or void as to a subsequent creditor or purchaser. To make it so, under the statute, actual fraud must be shown. In O'Kane v. Vinnedge, 108 Ky. 34, 21 Ky. Law Rep., 1551, 55 S. W. 711, it is said on this subject: "Appellees' contention rests upon the averments that conveyances to Mrs. McCann and from her to Mrs. O'Kane were not bona fide, and were not intended to divest Mrs. O'Kane of title; that they were a mere device resorted to by the grantor and grantees to enable appellant to cover up and hide his property. If a party be indebted at the time of a voluntary conveyance of his property, such conveyance is presumed to be fraudulent as to those debts; and this presumption as to prior debts does not depend upon the intentions or circumstances of the party conveying, or the amount conveyed. The law will not permit an inquiry to be made into these matters, or give them any weight or influence. As to subsequent debts, the creditor who assails a voluntary conveyance must show in addition circumstances justifying the presumption that the intent of the conveyance was fraudulent, before the land conveyed could be properly subjected to the payment of such debts." Rose v. Campbell, 76 S. W. 505, 25 Ky. Law Rep., 885; Frazier v. Frisbie Furniture Co., 86 S W. 539, 27 Ky. Law Rep., 688.

In the case at bar it was incumbent on the appellant to prove actual fraud in the conveyance, which has

not been done, and, in the absence of such proof fraud cannot be presumed as to a subsequent debt like that sued on. The character of the transaction in question, and the circumstances surrounding the execution and delivery of the deed, make it impossible to believe that Sanderson or appellee at the time of this conveyance could have had in contemplation the creation of the debt evidenced by appellant's judgment, or that the former would several years subsequently utter against the appellant the slander for which the judgment was obtained.

For the reasons indicated the judgment is affirmed.