**Hatfield, et al. v. Cline, Trustee.**
**Hatfield, et al. v. Cline, Trustee.**
**Hatfield, et al. v. Cline, Trustee.**

(Decided May 10, 1911.)

## Appeals from Pike Circuit Court.

1. Fraudulent Conveyances—Action to Set Aside—While the grantor may have been moved by affection for his sons to execute the conveyances, they were without monied consideration, and were voluntary in contemplation of law, and being voluntary they were fraudulent as to such debts as the grantor was then owing.

2. Same—Intent With Which Grantor Acts.—The intent and purpose with which the grantor acts is not material, the conveyance is voluntary, as that fact makes it fraudulent as to existing debts.

3. Cross Appeal—Review of Ruling of Trial Court—Appellee not having taken a cross appeal from that part of the judgment giving appellants a lien for improvements, the ruling of the trial court upon these matters cannot be reviewed.

CASSIUS M. WHITT for appellant.

A. E. AUXIER, T. H. HARMAN and J. S. CLINE, for appellee.

OPINION OF THE COURT BY JUDGE SETTLE—Affirming.

The appellee, J. S. Cline, trustee in bankruptcy of the appellants, G. W. Hatfield, and Ira Hatfield, brought these three actions in the court below to set aside certain deeds made by the appellant, G. W. Hatfield and wife to his three sons, the appellants, Ira, Boyd and A. E. Hatfield; the deed to each conveying fifty acres.

The petition in each case alleged the bankruptcy of G. W. Hatfield and Ira Hatfield; the appointment and qualification of appellee as trustee; and that the deeds in question were made by G. W. Hatfield when he was insolvent and he and his grantees knew of his insolvency; that the conveyances were without consideration, voluntary, and intended by both grantor and grantees to defraud the former's creditors. It was also alleged in the petition that the bankrupts, G. W. and Ira Hatfield, had failed as merchants; that the lands conveyed by the former to his sons were liable for his and the firm's debts; and it was asked that they be subjected to their payment.

The answer in each case denied any fraud in the conveyances and also denied the insolvency of the grantor, but admitted that he was "slightly" indebted when the deeds were made. It was alleged in the answers that the lands conveyed by the grantor, G. W. Hatfield to his sons were parts of a tract to which he held the title, but which had been purchased with money belonging to the first wife of the grantor and mother of the grantees, realized from the sale of certain other lands given her by her father, and that the deeds from appellant G. W. Hatfield to his sons were executed by her request made before her death.

It was further averred in the several answers that G. W. Hatfield is a bona fide housekeeper with a family; that he resides on the tract of land from which the parcels conveyed his sons were taken; that as against his creditors he is entitled to a homestead in the entire tract of which the parcels conveyed his sons were parts; that the whole did not exceed $1,000 in value; and that if the court should declare the deeds to his sons fraudulent the whole of the land should be adjudged to him as and for a homestead. In addition to the matters of defense referred to, it was also alleged in the answers that the grantees in the three deeds were bona fide purchasers of the lands conveyed them respectively; that each had made upon the parcel conveyed him valuable and lasting

improvements, the character and value of which were fully set forth, and it was prayed, in the events the deeds were set aside, that each grantee be allowed the value of his improvements and a lien on the land described in his deed to secure the payment thereof.

Replies were filed controverting all affirmative matter of the answers. Upon the completion of the issues the three actions were consolidated, and upon the hearing the circuit court rendered judgment setting aside the several deeds attacked and subjecting the parcels of land thereby conveyed to the payment of the debts of appellants, G. W. Hatfield and Ira Hatfield. It was also adjudged that the improvements placed by appellant, A. E. Hatfield, upon the land conveyed him increased its vendible value $275, but that he was chargeable with rents to the amount of $200, and for the difference between these sums, $75, he was given a lien on the land; that the appellant, Boyd Hatfield, had, by the improvements he put upon the land conveyed him, increased its vendible value $50 in excess of its rental value while he had it in possesion, and for that amount he was given a lien on the land. The appellant, Ira Hatfield, was allowed nothing for improvements, as it was adjudged that the rental value of the land conveyed him for the time it was in his possession, equalled the increased vendible value given it by the improvements.

Appellants complain of the judgment and ask its reversal.

Their principal contention is that the debts on account of which the appellants, G. W. and Ira Hatfield, were thrown into bankruptcy, were not created until after the deeds from the former to his three sons were executed; and that the deeds, though voluntary, were not fraudulent as to the grantor's creditors.

While each deed recites that $50 was the consideration for the sale of the land therein conveyed, the depositions of father and sons show that the $50 was not paid by any of the grantees, nor was it intended that any amount would be paid by them for the land. It is patent, therefore, that the deeds were without monied consideration, and this being true they were voluntary conveyances in contemplation of law, although the grantor may have been moved to their execution by the affection he bore his sons. As the conveyances were undoubtedly voluntary, they were

prima facie fraudulent as to such debts as the grantor, G. W. Hatfield, was then owing. With respect to such conveyances, section 1907, Kentucky Statutes, provides:

"Every gift, conveyance, assignment, transfer or charge made by a debtor, of or upon any of his estate, without valuable consideration therefor, shall be void as to all his then existing liabilities, but shall not, on that account alone, be void as to the creditors whose debts or demands are thereafter contracted, nor as to purchasers with notice of the voluntary alienation or charge; and though it be adjudged to be void as to a prior creditor, it shall not, therefore, be deemed to be void as to such subsequent creditors or purchasers."

In O'Kane v. Vinnedge, et al., 108 Ky., 34, 21 R., 1551, we said:

"If a party be indebted at the time of a voluntary conveyance of his property, such conveyance is presumed to be fraudulent as to those debts, and this presumption as to prior debts does not depend upon the intentions or circumstances of the party conveying, or the amount conveyed. The law will not permit an inquiry into these matters, or give them any weight or influence. As to subsequent debts, the creditor who assails a voluntary conveyance must show, in addition, circumstances justifying the presumption that the intent of the conveyance was fraudulent before the land conveyed could be properly subjected to the payment of such debts. (Hanson v. Buckner, 4 Dana, 251; Enders v. Williams, 1 Met., 346.)

It is the intent and purpose with which the grantor acts which renders the conveyance fraudulent, and this must be determined by the facts of each particular case." (Bank Commerce v. Payne, 86 Ky., 446; Beatty v. Dudley, 80 Ky., 381; Slater v. Sherman, 5 Bush, 206; Rose, et al. v. Campbell, 25 R., 885.)

Keeping in view the rule announced in the case, supra, it remains to be determined whether the debts to which appellee seeks to subject the lands conveyed by the appellant, G. W. Hatfield, to his sons, were owing by him when the deeds were lodged for record. It was not alleged or proved by appellants that appellee, or any creditor whom he represents, knew of the execution or existence of the deeds before they were recorded. The deed to Ira Hatfield bears date March 6, 1904, purports to have been acknowledged by G. W. Hatfield and wife

September 6, 1904, but the certificate of the acknowledg-·
ment is dated September 6, 1905.

The deed was not lodged for record nor the tax paid
until September 16, 1905, and it was recorded September
29, 1905.

The deed to Boyd Hatfield bears date March 16, 1904,·
purports to have been acknowledged by the grantors
September 6, 1905, was lodged for record September 16,·
1905, and put to record September 29, 1905. The deed
to A. E. Hatfield bears date September 6, 1904, purports
to have been acknowledged on the same day, was lodged
for record September 16, 1905, and recorded September
29, 1905.

Section 496, Kentucky Statutes, provides:

"No deed or deed of trust or mortgage conveying a
legal or equitable title to real or personal estate shall
be valid against a purchaser for a valuable consider-
ation, without notice thereof; or against creditors, un-
til such deeds shall be acknowledged or proved accord-
ing to law, and lodged for record."

According to the testimony of Ira Hatfield he did not
know of the execution of the deeds until they were given
him by his father a day or two after their execution,.
which he said was in September, 1904; and they were
kept by him in his trunk until they were lodged for rec-
ord. As they were not lodged in the office of the clerk of
the Pike County Court for record until September 16,
1905, they must have remained in his trunk fully a year.

It is apparent from the evidence that substantially
all of the indebtedness of G. W. and Ira Hatfield was
created prior to the date of the lodging of the deeds
for record. They conducted as partners a mercantile
business at Matewan, West Virginia; were carying it on
there during the year the deeds were in Ira Hatfield's
trunk, and sold the business soon after the deeds were
recorded and shortly before the insolvency of the firm
and its members became known. The indebtedness of
the firm grew out of the business at Matewan, and when
the failure of the partners became known it was so hope-
less as to give cause for forcing the firm and members
into bankruptcy.

It appears from the record that the unsecured in-
debtedness of the firm and members amounted to
$4,037.96, and that the secured indebtedness was $1,600.
·The greater part of this indebtedness was shown by the

schedule sworn to and filed by the partners in the bankrupt court; and the statement or schedule of debts filed by the creditors in the consolidated actions, giving the dates of all items of indebtedness, demonstrate beyond doubt that practically every item of the indebtedness was incurred before and existed at the time the three deeds from G. W. Hatfield to his sons were lodged for record. In view of the foregoing facts it is manifest that there is no merit in the contention of appellant's counsel that the circuit court erred in its conclusion that these debts were contracted before the conveyances from G. W. Hatfield to his son took effect.

It is equally apparent from the record that the conveyances could not have been upheld by the court below on the ground that they were made in pursuance of a trust. It is true that appellants, or some of them, testified that the tract of land, of which the parcels conveyed by the appellant, G. W. Hatfield, to his three sons were parts, had been purchased with money which their mother had realized from other land deeded to her by her father; and that she, before her death, requested that the lands now claimed by her sons be deeded them by their father; but this oral testimony can not be accepted as establishing the alleged trust, in view of the opposing facts shown by the record. The deed through which G. W. Hatfield obtained title to the land now claimed to have been purchased with the money of his wife does not in words, or by implication, manifest a trust, but in the usual form and in unambiguous language conveys the title to G. W. Hatfield absolutely, reciting that the consideration was paid by him. Moreover, the deed was made and recorded in 1895, his wife lived several years thereafter, and his ownership and control of the land seem to have been altogether free of any claim on her part to the land, or that he held the title in trust for her or her sons.

The answers do not aver, nor was there any proof conducing to show, the alleged trust, or that G. W. Hatfield wrongfully took the title to the land to himself when it should have been conveyed the wife, or that there was any fraud or mistake in the execution of the deed. So, in such a state of case, even if it were admitted that the land was paid for with the wife's money, no trust resulted from the conveyance of the land to the husband. In other words, the creation of a trust under such cir-

cumstances is forbidden by section 2353, Kentucky Statutes, which provides:

"When a deed shall be made to one person, and the consideration shall be paid by another, no use or trust shall result in favor of the latter, but this shall not extend to any case in which the grantee shall have taken a deed in his own name without the consent of the person paying the consideration, or where the grantee, in violation of some trust, shall have purchased the lands deeded with the effects of another person."

We are also of opinion that the circuit court did not err in refusing the appellant, G. W. Hatfield, a homestead in the lands conveyed his sons. It appears from the evidence that after making the deeds to his sons there remained of the tract, from which the parcels of fifty acres each conveyed them were taken, at least one hundred acres upon which was situated a large two-story, commodious family residence, barn and other outbuildings. The appellant, G. W. Hatfield yet holds the title to and resides upon this 100 acres. According to the evidence, it is worth at the lowest estimate, $1,000, and in the bankruptcy proceedings it was claimed by him as a homestead, appraised at $1,000, and set apart to him as a homestead. As he was entitled to but one homestead and it was set apart to him, he can not complain that he was refused more land. Having accepted the homestead thus set apart to him, as of the value of $1,000, he was estopped to claim in these cases that it was worth less than that amount or to demand other lands by way of increasing its value to $1,000.

As it does not appear that appellee has taken a cross-appeal from that part of the judgment giving the appellants Boyd and A. E. Hatfield a lien each for the value of the improvements, we can not review the ruling of the circuit court on these matters.

Being of the opinion that the deeds made by appellant, G. W. Hatfield, to his sons were voluntary and fraudulent as to his creditors, and that the lands thereby attempted to be conveyed were properly adjudged liable for his debts, the judgment is affirmed.