## In re HAYWOOD WAGON CO.

### In re BEALS & CO. et al.

(Circuit Court of Appeals, Second Circuit. December 15, 1914.)

### No. 76.

1. BANKRUPTCY &#x2192;269—ASSETS—SALE—OBJECTIONS.

While a single creditor, if actually wronged by a sale of the bankrupt's assets, may properly complain of an order confirming the sale, yet the fact that all the secured and most of the unsecured creditors were satisfied with the sale is some proof that the good faith of the trustee in making the sale should not be impugned.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 370; Dec. Dig. &#x2192;269.]

2. EXECUTION &#x2192;213—"EXECUTION SALE"—DISTINGUISHED FROM "JUDICIAL SALE."

An execution sale of property is not a "judicial sale," since the officer making an execution sale derives his authority from his writ and the statute, which sale does not need confirmation, while the authority to make a judicial sale is derived from the court, and such sale confers no right to the property sold until confirmed.

[Ed. Note.—For other cases, see Execution, Cent. Dig. § 600; Dec. Dig. &#x2192;213.

For other definitions, see Words and Phrases, First and Second Series, Execution Sale; Judicial Sale.]

3. JUDICIAL SALES &#x2192;7—MANNER OF SALE—ORDER OF COURT.

In cases not governed by a mandatory statute, the court has power to direct how a judicial sale shall be made and may order the property sold either in parcels or as a whole.

[Ed. Note.—For other cases, see Judicial Sales, Cent. Dig. § 20; Dec. Dig. &#x2192;7.]

4. BANKRUPTCY &#x2192;262—SALE OF ASSETS—SALE EN MASSE.

Where an order directing the sale of a bankrupt's assets provided that the real estate and property mentioned, situated at N., should be first put up for sale in one parcel, but should not be struck off at once, the highest bid therefor being recorded, and thereafter the real estate at B. should be sold in the same manner, but not struck off, and thereafter the real estate and property mentioned, situated at N. and at B., should be offered in one parcel, and, if the sum bid therefor should be greater than the sum bid for the two parcels previously offered separately, both parcels should be struck off to the highest bidder on the last sale, otherwise each parcel should be struck off to the highest bidder when the properties were first offered, a sale of the whole property en masse which brought the highest bid was proper.

[Ed. Note.—For other cases, see. Bankruptcy, Cent. Dig. §§ 363–365; Dec. Dig. &#x2192;262.]

5. BANKRUPTCY &#x2192;178—MORTGAGE—VALIDITY—FRAUD.

A mortgage of a corporation's property to secure bonds expressly recited that it was the parties' intention, so far as lawful, to include all property and rights previously described, owned, or thereafter acquired by the corporation, but not to include merchandise, materials, property, or chattels which ordinarily were the subject of sale in the usual course of business of the corporation, or any cash, claims, book accounts, or bills receivable, so long as the corporation was not in default, and that though the mortgagor might alter, remove, sell, or dispose of any buildings, fixtures, machinery, or other appliances on the mortgaged premises, which could not be advantageously used in the judicious operation and manage-

ment of the business, it would, in the event of such alteration, removal, sale, or disposition, replace any buildings, fixtures, machinery, or other appliances removed, sold, or otherwise disposed of, by acquiring, subject to the mortgage, other real estate, or placing on the mortgaged property, subject to the mortgage, other buildings, fixtures, machinery, or other appliances equal in value to the property so removed, sold, etc. *Held,* that it was not fraudulent as against the corporation's creditors as permitting it to sell off for its own benefit the mortgaged chattels without accounting to the mortgagee therefor.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 221, 264–274, 283, 284; Dec. Dig. ☾═▷178.]

6. JUDICIAL SALES ☾═▷8—CONDITIONS—INCUMBRANCES.

Whether property should be sold at a judicial sale free from or subject to incumbrances is within the judicial discretion of the court ordering the sale.

[Ed. Note.—For other cases, see Judicial Sales, Cent. Dig. § 32; Dec. Dig. ☾═▷8.]

Petition to Revise Order of the District Court of the United States for the Western District of New York.

The Haywood Wagon Company was a stock corporation duly organized and existing under the laws of the state of New York. It was established in the village of Baldwinsville, Onondaga county, N. Y. It had an authorized capital stock of $130,000, and its business was the manufacture of dump wagons embodying certain patented features of acknowledged merit. In 1910 it removed its factory to Newark, Wayne county, N. Y. It owned a parcel of land at Newark comprising about 16 acres, the plant being erected on one-half of it. The Newark property is spoken of as two parcels, one used for manufacturing purposes, and the other not. After the removal to Newark, the company retained the Baldwinsville property. In August, 1909, and prior to the removal to Newark, it executed to Peter R. Sleight, as trustee, a mortgage for the purpose of securing an issue of its bonds in the amount of $50,000. On March 4, 1913, the company was adjudicated a bankrupt upon involuntary proceedings. On April 12, 1913, Peter R. Sleight was elected trustee. After an earnest and unsuccessful attempt to effect a reorganization of the bankrupt concern, an application was made for authority to sell the assets, and an order was made directing a sale on October 16, 1913, of the property subject to all liens and incumbrances. On October 15th, one of the creditors filed objections to the sale; one of the grounds being that no sale should take place until the scope or extent of certain alleged liens including the trust mortgage had been judicially determined. The sale nevertheless took place and later was confirmed by the referee notwithstanding objections to confirmation made by certain creditors. But the order confirming the sale was subsequently reversed by the District Court, and the sale was set aside. Thereafter, on motion for reargument, the matter was reopened, and the question of the confirmation of the sale was recommitted to the referee, for further consideration. A rehearing by the referee was had on March 12, 1914, and on March 26, 1914, the referee made an order confirming the sale except as to the wagons. Then followed a petition by certain creditors for a review of this order by the District Court, but

the court again confirmed the sale except as to the wagons, and an order to that effect was entered in the office of the clerk of the court on May 5, 1914. A petition to review and revise that order brings the matter to this court.

August Becker, of Buffalo, N. Y., for petitioners.

Joseph Gilbert, of Newark, N. Y., for trustee.

Harris, Beach, Harris & Matson, of Rochester, N. Y., for respondent bondholders.

Before LACOMBE, WARD, and ROGERS, Circuit Judges.

ROGERS, Circuit Judge (after stating the facts as above). We are asked to set aside and annul an order entered in the court below confirming a sale of the bankrupt's property. The court had the subject of the confirmation of this sale before it twice and seems to have given the matter careful consideration. In his final decision of the question the District Judge declared he had "become satisfied that a resale of the property of the bankrupt company which is the subject of this controversy, or of any separate parcel thereof, free from mortgages, accrued interest, and taxes, would not be of substantial benefit to the unsecured creditors and would probably be detrimental to the secured creditors." He stated it as his opinion that the liens and incumbrances on the property were valid and that the existence of these liens and incumbrances accounted for the small amount realized at the sale. He also stated it as his conviction that a resale separately of the Baldwinsville property free from all liens might bring something more than the amount of the incumbrances thereon, but that the probability of its doing so was remote and would not in any event compensate for the additional costs and expenses which it would entail. And he concluded by saying that he thought that the sale subject to mortgages and liens was for the best interests of the secured and unsecured creditors of the bankrupt company, and he directed that an order be entered affirming the referee's confirmation of the sale.

[1] The objections to the confirmation are made by certain unsecured creditors. All the secured and some of the unsecured creditors favored confirmation. The unsecured creditors who approved the sale and asked for its confirmation filed claims which aggregated $47,113.73 or nearly two-thirds of the total of the unsecured claims. These included, it seems, practically all the unsecured creditors residing in Newark and Baldwinsville where the real estate involved is situated. Their judgment, whether this property was sold for all that could reasonably be expected, and whether the sale was conducted in good faith and for the best interest of all the creditors, shows what is thought by those who may be assumed to know the most about the actual conditions. The objecting creditors, at the time of the confirmation of the sale, represented claims approximating in amount one-seventh of the unsecured claims. This, of course, can have no decisive influence upon the question submitted. A single objecting creditor if actually wronged, no doubt has as good a right to complain as more would have, and it would be as much the duty of the

219 F.—42

court to protect him against an invasion of his rights as to protect a greater number. But the fact that all the secured and most of the unsecured creditors are satisfied with what has been done in the sale of this property affords some indication that the good faith of the trustee ought not to be impugned.

At the sale all of the real estate together with the plant, fixtures, machinery, equipment, etc., was struck off subject to all incumbrances, including the trust mortgage, for $200. The value of this property as reported by the company to R. G. Dunn & Company, in February, 1912, was $160,000. At the time of the sale the incumbrances were as follows: The trust mortgage for $50,000; another mortgage of $5,000 on that part of the Newark property not used for manufacturing purposes; another mortgage for $1,400 upon the Baldwinsville property—the whole aggregating about $61,400.

The real estate at Newark was offered for sale separately—subject to liens—and the highest and only bid therefor was $50. The real estate at Baldwinsville—subject to liens—was then offered and the highest and only bid therefor was $75. Both parcels were then offered together upon the same terms, and there were three bids, $150, $175, and $200, and the property was struck off to Russell S. Johnson, of Camden, N. Y., for $200.

Then the personal property was offered for sale on exactly the same terms as the real estate—subject to liens and incumbrances.

The first parcel offered consisted of 52 unfinished wagons which were sold subject to a supposed lien of the Union Trust Company of Rochester, N. Y., to the amount of $8,814.91. The highest and only bid on the wagons was $1. Then other portions of the personal property were offered for sale, first in separate lots and then in one lot; the whole bringing between $3,500 and $4,000.

There is no doubt but that courts have held that sales of real property en masse are improper. In Woods v. Monell, 1 Johns. Ch. (N. Y.) 505 (1815), Chancellor Kent laid down the rule:

"That where a tract of land is in parcels, distinctly marked for separate and distinct enjoyment, it is in general the duty of the officer to sell by parcels and not the whole tract in one entire sale."

In Williams v. Allison, 33 Iowa, 278 (1871), the court held that where the property sold was not contiguous—and in the case at bar it was not contiguous, a part being in Newark and a part in Baldwinsville —different tracts could not be sold together and that the illegality of such a sale could not be avoided by first offering the different tracts or lots separately. The court said that, if no bids were received when distinct parcels were offered separately, this fact could give no authority to sell en masse, and that, if a sale was made en masse, the sale could be set aside upon the principles of either the common law or the statute. And it added that such a sale could be avoided even as against a third person who was a bona fide holder for value, provided the application to avoid was made without laches. Where the property is contiguous, a different principle would be applied. And the same court has held, without expressly overruling its former decision, that if the entire tract or the different tracts, for any reason,

are more valuable when taken together and will in that way sell for a larger sum, they may be so sold. Connecticut Mutual Life Ins. Co. v. Brown, 81 Iowa, 42, 46 N. W. 749 (1890). Other cases might be cited to show that sales en masse have been condemned and set aside. But all these are cases of sales upon execution and they generally proceed upon the theory that a sale en masse embarrasses the right of redemption. The theory of such cases is that the execution debtor has an absolute right to redeem any one parcel separately to the exclusion of the rest and that by a sale in solido he is deprived of this privilege. And it would be a needless sacrifice of the debtor's property to sell en masse where property is susceptible of division and a smaller portion would have satisfied the debt. Smith v. Huntoon, 134 Ill. 24, 29, 24 N. E. 971, 23 Am. St. Rep. 646 (1890). We do not need to consider whether these cases accord with the weight of authority or whether they are sound in principle.

[2] An execution sale is not a "judicial sale." The officer makes an execution sale under the authority of his writ and of the statute. The proceeding before us is one of a very different nature. In a judicial sale, such as the one complained of, the court is the vendor and the sale is by the court even though made through the instrumentality of a referee. The sale, in such a case as this, confers no right to the property sold until it has been confirmed by the court. It is this confirmation that makes the sale the act of the court. In an execution sale there is no report made to the court and no confirmation of the sale made by the court. The principles applicable to the one class of sales are not necessarily applicable to the other.

[3, 4] In cases not governed by a mandatory statute, a court has the power to direct how a judicial sale shall be made and may order the property sold either in parcels or as a whole. The most usual method is to offer it in parcels; it being supposed that the highest price will be thus realized. But the state courts have held in a number of cases that a judicial sale may properly be made of the property as a whole where it appears that it is more advantageous to make it in that way. O'Kane v. Vinnedge, 108 Ky. 34, 55 S. W. 711; McMuller v. Gable, 47 Ill. 67; McCall's Succession, 28 La. Ann. 713; American Ins. Co. v. Oakley, 9 Paige (N. Y.) 259. And a like view of the matter has been taken in the federal courts. Johns v. Slack, Fed. Cas. No. 7,363. Sometimes the property is offered first in parcels and then as a whole and the highest offer obtained is accepted. Godchaux v. Morris, 121 Fed. 482, 57 C. C. A. 434; Vanmeter v. Vanmeter, 88 Ky. 448, 11 S. W. 80, 289. This course was pursued here, and, as the amount of the bid was greater for the whole than for the parcels sold separately, the bid for the property en masse was rightly accepted. It is sometimes even left to the discretion of the officer who conducts the sale to determine whether he will sell in gross or in parcels. But that was not the course which was pursued in this sale. The order directing the sale stated specifically the manner of sale and the trustee observed it to the letter. The order was as follows:

"The real estate and property above mentioned situate in Newark, shall first be put up for sale in one parcel but shall not be struck off at once, but

the highest bid therefor recorded; thereafter the real estate situate at Baldwinsville shall be sold in the same manner, but not struck off, but the highest bid therefor recorded; thereafter the real estate and property above mentioned situate at Newark and at Baldwinsville shall be offered for sale in one parcel and if the sum bid therefor in one parcel shall be greater than the sum bid for the two parcels theretofore offered separately, both parcels shall be struck off to the highest bidder upon this last sale. Otherwise each parcel shall be struck off to the highest bidder when the properties were first offered."

[5] The objecting creditors in the matter before us claim that the trust mortgage is fraudulent in law and void as against creditors for the reason that it permits the mortgagor to use and dispose of the mortgaged property, or portions thereof, for its own use and benefit and without requiring the proceeds to be applied in payment of the mortgage debt. No question is raised as to the mortgage having been authorized by the corporation or as to its having been regularly executed, delivered, and recorded. And it is not disputed that the $50,-000 bonds, which it was issued to secure, were duly issued and constituted a valid obligation against the bankrupt corporation. The courts in New York have held that it is established law, in that jurisdiction, that a mortgage is fraudulent as a matter of law and void as against creditors which permits the mortgagor to carry on a retail business selling off for his own benefit mortgaged chattels the mortgagee retaining all the time a lien on the whole stock with a right on default to take possession of the remaining goods and sell them for the payment of his debt. Skilton v. Codington, 185 N. Y. 80, 77 N. E. 790, 113 Am. St. Rep. 885. In the case of In re Marine Construction & Dry Dock Co., 144 Fed. 649, 75 C. C. A. 451 (1906), we followed somewhat reluctantly the rulings of the New York courts and held a New York mortgage fraudulent in law which permitted a mortgagor to go on and sell part of the materials covered by the mortgage and use the money therefor generally in its business and for its personal use. We would, no doubt, feel it our duty to adhere to the rule we then laid down if the mortgage assailed was such as to bring it within the principle enunciated. In following the decisions of the local courts upon such a question we are following the rule which the Supreme Court laid down in Etheridge v. Sperry, 139 U. S. 266, 277, 11 Sup. Ct. 565, 569 (35 L. Ed. 171) (1890), where it said:

"We are aware that there is great diversity in the rulings on this question by the courts of the several states; but whatever may be our individual views as to what the law ought to be in respect thereto, there is so much of a local nature entering into chattel mortgages that this court will accept the settled law of each state as decisive in respect to any case arising therein."

The fact of the matter, however, is that the mortgage does not authorize the mortgagor to do what counsel insist the New York courts condemn as amounting to fraud in law. The parties to this mortgage took care to keep strictly within the law as expounded by the courts of the state. The mortgage states expressly that:

It is "the intention of the parties hereto, so far as lawful to include within the term and lien of this instrument all property and rights of the character hereinbefore described now owned or hereafter acquired by the company but

not to include hereunder any merchandise, materials, property or chattels which ordinarily are the subject of sale in the usual course of business of said company or any cash or any claims, book accounts or bills receivable, so long as said company is not in default hereunder."

The bondholders do not claim, and never have contended, that this mortgage was a lien on this excepted personalty. And at the sale the merchandise, materials, and stock in trade were sold separately from the bankrupt's plant and not as being subject to any lien of any description.

But counsel for the petitioners complain that the mortgage permitted the mortgagor "to alter, remove, sell or dispose of any buildings, fixtures, machinery or other appliances upon the mortgaged premises which cannot be advantageously used in judicious operation and management of the business of said company." The criticism passed upon this provision might be justified if that clause stood without qualification but the clause also declared that in the event of such alteration, removal, sale or disposition the company agreed that in such case it would replace "any buildings, fixtures, machinery or other appliances removed, sold or otherwise disposed of by acquiring subject to this mortgage, other real estate or placing upon the mortgaged property, subject to this mortgage, other buildings, fixtures, machinery or other appliances equal in value to the value of the property so removed, sold or otherwise disposed of or by paying to the trustee the appraised value of such property, etc." This court, however, in the case of In re Marine Construction & Dry Dock Co., supra, declared through Judge Lacombe that it was abundantly settled by authority that a mortgagee of materials could agree with the mortgagor that the latter should remain in possession of the goods and might sell them from time to time, provided that the proceeds of all goods thus sold were applied either to payment on the mortgage or to reducing the amount of some prior lien, or to the purchase of additional property, of not inferior value to take the place of what was sold. Applying to the clause in question the principle we then announced, we find nothing in the clause to invalidate the mortgage.

We fail therefore to find any invalidity in this mortgage and think the claim that it is fraudulent in law is without merit. And as the mortgage was a subsisting lien, we cannot see how creditors were prejudiced by a sale of the property subject to it.

The objectors assert that the trust mortgage does not cover the real property of the bankrupt situated at Baldwinsville or the southerly eight acres at Newark not covered by the factory, and that, as all the real estate was sold subject to this mortgage, it failed to bring as much as would have been realized if it had not been sold subject to this particular incumbrance. That it was not possible to obtain a fair price for the property as the question had not been determined whether the whole of the real estate was subject to the mortgage. Under some circumstances, there would be force in this objection; but under the circumstances of this case it is without merit, for the trust mortgage was not the only lien upon these properties. If the trust mortgage is valid and we have held it to be such, it is unquestionably

a lien on that part of the Newark property on which the factory stands. The remaining eight acres at Newark are subject to an undisputed mortgage to the Senecca Falls Savings Bank for $5,000 and interest, and there is evidence in the record which leads us to believe that these eight acres would not sell for more than enough to pay that mortgage and interest regardless of the question whether or not it is subject to the trust mortgage. As to the Baldwinsville property, the testimony satisfies us that the reasonable market value of that property does not exceed the amount of the undisputed liens against that property; the lien of the trust mortgage being excluded. This was the opinion of the District Court, and an examination of the testimony convinces us that the record affords ample justification for the conclusion which that court reached.

At the hearing before the referee when the subject of confirmation of the sale was under consideration and certain creditors were opposing confirmation, the referee at the close of the discussion inquired whether they or any of them would indemnify the bankrupt estate and guarantee it against loss upon a resale of the property sold if confirmation of the sale should be denied. To this inquiry none of the parties appearing made any response whatever. Notwithstanding this fact, attention is called in the argument before us to the small amount realized at the sale and we are asked to set the sale aside and order the property resold. Under the old English practice, before a sale had been confirmed courts would open the biddings and direct a resale of the property in case a person was ready to offer a larger price than the property brought at the first sale. But this practice in England was abolished by statute. St. 30 and 31 Vict. c. 48, § 7. And now in that country to entitle the parties to open the biddings it appears to be necessary to show either fraud or such misconduct as borders on fraud. Delves v. Delves, L. R. 20 Eq. 77. In the courts of this country there seems to be some difference of opinion whether before confirmation it is proper to open the biddings to obtain a greater bid, and the practice of doing so has been widely condemned in our courts as making judicial sales unstable and as tending to chill the bidding. In a number of cases it has been held that there must be some further reason arising out of the circumstances of the sale sufficient to cause a refusal of confirmation or the application to reopen the bids will be denied. 24 Cyc. 42; Files v. Brown, 124 Fed. 133, 59 C. C. A. 403. If courts are strongly inclined to decline to open biddings even in cases where the advanced bid is actually brought into court, or a bond or guarantee of a higher bid is furnished, a fortiori the biddings cannot be opened where no such bid is offered and no such guaranty is produced.

[6] The objecting creditors urge that the property should have been sold free from incumbrances. There certainly is no rule which makes it the duty of a court to see that in a judicial sale the property is sold free from incumbrances. At the best it can only be said that the terms and conditions of a judicial sale are within the discretion of the court. Undoubtedly most such sales are made, and probably should be made, subject to incumbrances, and to the extent that the

objection made to this particular sale is based, not upon a general principle, but upon the circumstances that one of the incumbrances was of doubtful validity and scope, it has already been considered and answered.

The order is affirmed.